# FEDERAL DEFENDER SERVICES
# OF WISCONSIN, INC.

LEGAL COUNSEL

Craig W. Albee, Federal Defender
Krista A. Halla-Valdes, First Assistant

Joseph A. Bugni, Madison Supervisor
John W. Campion
Jessica Arden Ettinger
Anderson M. Gansner
Gabriela A. Leija
Dennise Moreno
Ronnie V. Murray
Tom Phillip
Joshua D. Uller
Alex Vlisides
Kelly A. Welsh

22 East Mifflin Street
Suite 1000
Madison, Wisconsin  53703

Telephone 608-260-9900
Facsimile 608-260-9901

September 9, 2021

Honorable James D. Peterson
Chief District Court Judge
120 North Henry Street
Madison, Wisconsin 53703

      Re:   *United States v. Brian Lamphier*
              Case No. 20-cr-149-jdp

Dear Judge Peterson:

      I write in anticipation of Mr. Lamphier's plea and sentencing hearing scheduled for September 14, 2021, to respectfully request that the Court impose a custodial sentence of six years' imprisonment to be followed by the minimum five-year term of supervised release. A six-year prison sentence—Mr. Lamphier's first-ever time in prison—is sufficient but not greater than necessary to meet the statutory purposes of sentencing.

      Mr. Lamphier will be pleading guilty to Count 2 of the Indictment which charges him with distribution of child pornography. Congress has fixed the penalty for that offense at no less than five years' imprisonment and no more than 20 years. The Sentencing Guidelines, however, set the advisory penalties well above 20 years, calculating an advisory guideline range of 262-327 months' imprisonment—exactly where Mr. Lamphier would be if he committed second-degree murder and just above the range for carjacking, if he'd shot the car's occupant. Even if the Court departs downward by two levels for the ubiquitous use-of-a-computer enhancement, the high end of the range still exceeds the statutory maximum. (PSR ¶ 146.)

FEDERAL DEFENDER SERVICES
   OF WISCONSIN, INC.

Judge James D. Peterson
September 9, 2021
Page -2-

While the Court must first calculate the advisory guideline range, it must then weigh the factors set forth in 18 U.S.C. § 3553(a) to determine an appropriate sentence. *See United States v. Panice*, 598 F.3d 426, 411 (7th Cir. 2010). Here, the Guidelines should not be the driver of Mr. Lamphier's sentence. Indeed, the government has conceded as much—it has agreed to recommend a sentence of imprisonment that does not exceed 180 months. (PSR ¶ 6.) There is a wide gulf between the recommendations of the parties, but the defense submits that a six-year prison sentence satisfies the goals of sentencing in this particular case.

The circumstances of the offense are detailed in the Presentence Investigation Report. While there is no question that Mr. Lamphier's conduct in this case warrants punishment, a few points merit discussion as the Court considers what an appropriate sentence should be here. First, Mr. Lamphier's initial contact with the victim was on the Grindr app, "a location-based social networking and online dating application for gay, bi, trans, and queer people." (PSR ¶ 22.) Use of the application is intended to be limited to individuals age 18 years and older;[1] Mr. Lamphier encountered the victim while he was browsing an application for adults—he was not trolling the internet's darkest, most disgusting corners setting out to arrange meetups with children or hoarding images of child pornography.

An analysis of Mr. Lamphier's telephone showed text messages dating back to July 2019 that "reflected KV1 orchestrating a money drop off by Lamphier into KV1's mother's

---

[1] **AGE RESTRICTIONS AND SAFETY.**

   1. <u>NO USE BY UNDERAGE PERSONS.</u> NO PERSONS UNDER THE AGE OF EIGHTEEN (18) YEARS (OR TWENTY-ONE (21) YEARS IN PLACES WHERE EIGHTEEN (18) YEARS IS NOT THE AGE OF MAJORITY) MAY DIRECTLY OR INDIRECTLY VIEW, POSSESS OR OTHERWISE USE THE GRINDR SERVICES.

   2. <u>YOU MUST BE A LEGAL ADULT.</u> YOU HEREBY REPRESENT AND WARRANT THAT YOU ARE CURRENTLY EIGHTEEN (18) YEARS OF AGE OR OVER (OR TWENTY-ONE (21) YEARS IN PLACES WHERE EIGHTEEN (18) YEARS IS NOT THE AGE OF MAJORITY) AND YOU ARE CAPABLE OF LAWFULLY ENTERING INTO AND PERFORMING ALL THE OBLIGATIONS SET FORTH IN THIS AGREEMENT.

   *See* https://www.grindr.com/terms-of-service/#:~:text=NO%20PERSONS%20UNDER%20THE%20AGE,MUST%20BE%20A%20LEGAL%20ADULT.

Federal Defender Services
 Of Wisconsin, Inc.

Judge James D. Peterson
September 9, 2021
Page -3-

mailbox in exchange for allowing him to perform oral sex on KV1. (PSR ¶¶ 31, 26.) After KV1 "made up excuses not to meet" with him, Mr. Lamphier "stopped putting money in the mailbox after determining that KV1 was not going to meet him." (PSR ¶ 26.) Eight months went by before Mr. Lamphier heard again from KV1. (PSR ¶ 31.) Again, in those intervening months, Mr. Lamphier was not trying to set up meetups with KV1 or any other children nor was he downloading or sharing child pornography.

In late March 2020, KV1 reached out to Mr. Lamphier again. KV1 apparently asked for $150 in exchange for meeting up, to which Mr. Lamphier replied, "For as often as I left money and we never met no I wont 150." (PSR ¶ 32.) Eventually, in a colossal failure of judgment, Mr. Lamphier and KV1 reached an agreement to personally meet each other. *Id.* The two made arrangements to meet several times after that, with the conduct escalating to include photographs of KV1, some taken by Mr. Lamphier and others sent by KV1 unsolicited. (PSR ¶ 36.) It was one of the photographs taken by Mr. Lamphier (that did not include KV1's face) that he sent to another individual via Facebook Messenger on April 8, 2020. (PSR ¶ 35.)

A few other points regarding the offense that, in the defense's view, must factor into the Court's consideration of the appropriate sentence. Again, there's no question that Mr. Lamphier's conduct was disgraceful and condemnable. But, the government's attempt to portray Mr. Lamphier as forcing or coercing KV1 to participate in activities he didn't want to do—particularly when asking for inclusion of the messages between Mr. Lamphier and KV1 in late May 2020 as set forth in paragraphs 38-41—does not tell the full story. Reports provided by the government in discovery show that, shortly after KV1 reached out to Mr. Lamphier again after the passage of nearly eight months, the two communicated on April 4, 2020, to discuss meeting again and negotiating the amount of money involved. After that:

> On 4-7-20 [KV1] tries to increase the price and Lamphier says no and that "90 is a lot for just a bj". [KV1] asks Lamphier if he would ever like to "eat my ass" and Lamphier responds "yes of course I'd definitely eat your ass". Lamphier says that he is willing to do most things as long as it is mutual and fair to both of them. [KV1] says that he would want 185 for him to eat his ass.

(Bates p. 525.) So, the act discussed in paragraphs 39-41 came about at KV1's initial suggestion. Mr. Lamphier, quite wrongly, all too readily agreed (and pursued it into the future), but he was clear that he would not want to force KV1 to do anything to which

FEDERAL DEFENDER SERVICES
  OF WISCONSIN, INC.

Judge James D. Peterson
September 9, 2021
Page -4-

they didn't mutually agree. KV1 had also asked Mr. Lamphier if he knew "any body (sic) that would be interested into being a sugar daddy also?" to which Lamphier said he did not, but if he did he'd let him know." (Bates p. 665.)

Lastly, the government suggested in paragraph 39 that KV1 was "reluctant" to meet at Mr. Lamphier's house, again, in an apparent attempt to convey that he was trying to convince KV1 to do things he didn't want to do. Again, reports in discovery do not entirely support that suggestion. *See also* PSR ¶ 36. A report notes that on April 22, 2020, Mr. Lamphier asked the victim if he'd "be willing to come to his place." (Bates p. 526.) When KV1 declined because he didn't want to leave his siblings alone at home, Lamphier responded, "its OK I understand." (Bates p. 625.)

The next time Lamphier mentioned KV1 possibly coming to his house was two weeks later, on May 6. Lamphier asked "any chance you can meet at my place Saturday morning" and KV1 responded less than a minute later saying "Yea Saturday morning but I need the 100 Friday morning." (Bates p. 674.) The following day, KV1 still offered to come over to Lamphier's house but wanted more money. (Bates p. 677-79.) After apparently settling on $120 and receiving the money from Lamphier in advance as requested, KV1 backed out and tried to again renegotiate. (Bates p. 705.) Lamphier then told KV1 to keep the money he'd given him and said he was "done" with him and "find another guy." (Bates p. 409.) From May 16 into May 20, KV1 sent Mr. Lamphier approximately 130 individual messages, tried to call him several times, and sent unsolicited pornographic photographs, "asking if they could meet up and that he needed the money." (PSR ¶ 36; bates pp. 411-23.) Lamphier did not answer KV1 for many days until he finally replied later on May 20; they argued about the money Lamphier had already paid and how much more KV1 wanted, arrangements to resolve their differences, and later settled on meeting on May 23, 2020.

Now, none of preceding absolves Mr. Lamphier in any way for the decisions he made regarding his involvement with KV1. But a full picture of what took place matters. Most importantly, while Mr. Lamphier engaged in reprehensible conduct and had every opportunity to end it at any time, his offense here involved one victim only—a rather savvy victim who acted with agency. Mr. Lamphier was not actively looking across the internet for minor after minor to victimize or curating a library of child pornography; he never set out on Grindr (or anyplace else, like hanging out at the local swimming pool or lingering about schools) looking to become a child sexual predator.

Federal Defender Services
  Of Wisconsin, Inc.

Judge James D. Peterson
September 9, 2021
Page -5-

    Mr. Lamphier's history and characteristics bears this out. He has never been convicted of, let alone accused of, similar conduct. His entire criminal history consists of three OWI offenses—with the last one dating back over eight years ago. (PSR ¶ 66.) Since those convictions, Mr. Lamphier endeavored to get his abusive use of alcohol under control; he now only has "a glass of wine on a holiday or special occasion." (PSR ¶ 103.) He has served his country in the military, helped raise his children, and consistently supported himself through lawful employment—all of the prosocial things we'd hope for in a member of the community.

    Which makes Mr. Lamphier's crime here all the more puzzling and difficult to judge. But when deterrence, incapacitation, and retribution represent the purposes of sentencing, a six-year sentence is appropriate. As to retribution, the Court's sentence must recognize the commonsense notion that defendants can violate the same statute in more or less aggravating ways. There has to be punishment for what Mr. Lamphier did— he was the adult, and he knew what he was doing was wrong. Yet, this case represents the only offense of this nature in his 52 years. He's never been to prison before, and there can be no doubt that the nature of his incarceration will be complicated by the nature of his offense and his sexual orientation.

    A six-year prison sentence, followed by supervised release, will also advance the goals of deterrence and incapacitation. This prosecution alone serves as a specific deterrent—if Mr. Lamphier was warned that he may have been close to crossing a line in the past, now he knows exactly what happens when that line gets crossed. He will be spending the better part of his 50's in a federal prison, then on supervised release when he gets out, and as a sex offender registrant. Anything more than six years in prison—for his first time ever in prison—is not going to drive the specific-deterrence point home any further.

    As to incapacitation, a sentence exceeding six years is not necessary to protect the public. Again, this is Mr. Lamphier's first-ever conviction for conduct like this. He has been on strict pretrial release since December 14, 2020, and has diligently followed all conditions. (PSR ¶ 8.) Most importantly, the psychosexual evaluation completed by Dr. Nick Yackovich concluded that Mr. Lamphier presents "a low-to-average risk for future sexual offending behavior" and possesses characteristics important to successfully benefitting from treatment. (PSR ¶¶ 99, 97.) The strict supervision he will face upon his release from custody will go far to further the goal public-protection well beyond the period of incarceration.

FEDERAL DEFENDER SERVICES
   OF WISCONSIN, INC.

Judge James D. Peterson
September 9, 2021
Page -6-

     Mr. Lamphier's deserves punishment for his crime. But his case does not present such aggravating or violent circumstances that would warrant a sentence approaching 15 years' imprisonment. The Court, when setting his sentence, must consider his largely law-abiding life, lack of a history of committing any sex offense, that he's low-to-average risk of re-offending and amenable to treatment, his success on pretrial release, and that this will be his first-ever term of imprisonment.

     Thank you for your kind consideration.

                                     Sincerely,

                                     */s/ Kelly A. Welsh*

                                     Kelly A. Welsh
                                     Associate Federal Defender

cc:    AUSA Julie Pfluger
        Mr. Brian Lamphier

Enclosures